UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

NASHVILLE STUDENT ORGANIZING )
COMMITTEE, *et al*., )
)
    Plaintiff, )     Case No. 3:15-cv-0210
)     Judge Aleta A. Trauger
v. )
)
TRE HARGETT, in his official capacity as )
Tennessee Secretary of State, *et al*., )
)
    **Defendants.** )

## MEMORANDUM & ORDER

Third parties State Senator Bill Ketron, State Representative Susan Lynn, State Representative Curry Todd, and former State Representative Joe Carr (the "Legislators") have filed a Motion to Quash Subpoenas and Memorandum of Law in Support Thereof (Docket No. 27), to which the plaintiffs have a filed Response in opposition (Docket No. 28), and the Legislators have filed a Reply (Docket No. 30).[1]

In their Complaint (Docket No. 1), the plaintiffs challenge a provision of the Tennessee Voter ID law that specifically excludes a Tennessee student's university-issued photo identification card from being used as evidence of identity at the voting booth. *See* Tenn. Code Ann. § 2-7-112(c)(2)(B). The plaintiffs allege that the provision is unconstitutional under the Fourteenth and Twenty-Sixth Amendments to the United States Constitution because it

---

[1] The Legislators have moved by and through their counsel of record, the Tennessee Attorney General and Reporter for the State of Tennessee, who also represents the defendants in this action. For purposes of clarity, the court will refer to the moving party herein as the "Legislators."

1

discriminates against (or otherwise disenfranchises) voters at Tennessee's private and public not-for-profit colleges and universities on the basis of age or student status.[2]

Through the discovery process, the plaintiffs have attempted to gather information to support their constitutional claims. They have issued Rule 45 subpoenas for records to Senator Ketron, Representative Lynn, Representative Todd, former Representative Carr, State Representative Matthew Hill, former State Representative Debra Maggart, former State Senator Stacey Campfield, and State Representative Jerry Durham. Of the six legislators who were served with these subpoenas (Ketron, Lynn, Todd, Carr, Hill, and Campfield), the plaintiffs have received a limited record production from just two (Ketron and Lynn).[3] The plaintiffs also served two subpoenas for documents on officials at the Tennessee General Assembly's Office, but the plaintiffs received no responsive records back because older emails are routinely deleted from the General Assembly's servers.[4]

Having turned up short in their document discovery demands, the plaintiffs have served Rule 45 deposition subpoenas on Senator Ketron, Representative Lynn, Representative Todd,

---

[2] In their Answer, the defendants assert only two affirmative defenses: (1) that the court lacks subject matter jurisdiction over the Complaint; and (2) that the Complaint fails to state a claim upon which relief can be granted. (Docket No. 12.) However, the defendants have not moved to dismiss the Complaint.

[3] Three responded that they have no records (Hill, Campfield, and Todd), while the response date for the fourth (Carr) is pending. It appears that the plaintiffs' efforts to serve two additional legislators (Maggart and Durham) have been unsuccessful.

[4] According to the General Assembly's Office, the legislators' office email storage is capped at 125 MB and legislators are not obligated to retain records for purposes of the Tennessee Public Records Act, Tenn. Code Ann. § 10-7-503 *et seq.*

2

Case 3:15-cv-00210   Document 32   Filed 08/12/15   Page 2 of 8 PageID #: 243

and former Representative Carr.[5] The plaintiffs seek to depose these four individuals on eight topics relating to the challenged provision of the Tennessee Voter ID law. Those topics include, among others, the legislators' recollection of legislative deliberations concerning the provision, the legislators' understanding of the provision's scope, the legislators' knowledge of objective facts supporting the distinction embodied in the provision, and the legislators' knowledge of objective facts concerning voter fraud in Tennessee and in general. The Legislators have moved to quash the subpoenas, contending that the doctrine of "legislative immunity" shields them from being compelled to testify.

In their motion, the Legislators reference the parallel Speech or Debate Clauses of the United States Constitution and the Tennessee Constitution. The federal clause protects members of Congress from federal interference (by the executive or judiciary branches), and the Tennessee clause protects Tennessee legislators from Tennessee interference (by the Tennessee executive or judiciary branches), but neither clause affords protection to a Tennessee legislator against federal interference. *See United States v. Gillock*, 445 U.S. 360, 374 (1980). Thus, whether the Legislators enjoy immunity or privilege is a matter of federal common law, not a matter of federal or state constitutional law. *See Supreme Court of Va. v. Consumers Union of the U.S.*, 446 U.S. 719, 732 (1980) (legislative immunity); *In Re Grand Jury*, 821 F.2d 946, 957 (3d Cir. 1987) (legislative privilege). The privilege applies through Rule 501 of the Federal Rules of Evidence. *Perez v. Perry*, Case No. SA-11-CA-635, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) (citing *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 93-94 (S.D.N.Y. 2003)).

---

[5] The subpoenas include document requests that are essentially synonymous with the previous document requests.

3

Under federal common law, state legislators are absolutely immune from liability for their legislative acts. *Consumers Union*, 446 U.S. at 732. In cases involving constitutional challenges related to voting rights, the vast majority of federal courts have found that the federal common law also affords state legislators only a qualified (*i.e.*, not absolute) legislative privilege against having to provide records or testimony concerning their legislative activity. *See Perry*, 2014 WL 106927, at *1; *Rodriguez*, 280 F. Supp. 2d at 100; *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *7 (N.D. Ill. Oct. 12, 2011). Indeed, many of these courts have indicated that the legislative privilege, like all evidentiary privileges, "must be 'strictly construed' and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *7 (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)); *Rodriguez*, 280 F. Supp. 2d at 93-94; *Perry*, 2014 WL 106927, at *1.

Here, the plaintiffs cite a litany of recent federal decisions in which, in cases involving federal constitutional challenges premised on the right to vote, federal courts have found that the qualified privilege did not (at least in part) shield state legislators from producing responsive records or testifying at deposition. *See, e.g.*, *Rodriguez*, 280 F. Supp. 2d at 95-96; *Favors v. Cuomo*, 285 F.R.D. 187, 214 (E.D.N.Y. 2012); *Perez v. Perry*, SA-11-CV-635, slip op. (W.D. Tex. Aug. 1, 2011) (Docket No. 102 in that case); *Perez*, 2014 WL 106927, at *1; *Veasey v. Perry*, No. 2:13-cv-193, 2014 WL 1340077, at *1 (S.D. Tex. Apr. 3, 2014), *aff'd in part and rev'd in part*, -- F. 3d --, 2015 WL 4645642 (5th Cir. Aug. 5, 2015); *Bethune-Hill v. Va. State Bd. of Elections*, -- F. Supp. 3d --, 2015 WL 3404869, at *9-15 (E.D. Va. May 26, 2015); *Baldus v. Members of the Wis. Gov't Accountability Bd.*, No. 11-CV-562, 11-CV-101, 2011 WL

4

6122542, at *2 (E.D. Wis. Dec. 8, 2011); *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657, 666 (E.D. Va. 2014). For the most part, federal courts have employed the following five-factor test to determine whether the privilege should apply in a given case: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the "seriousness" of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. *Rodriguez*, 280 F. Supp. 2d at 101; *Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *7; *Perry*, 2014 WL 106927, at *2.

The plaintiffs argue that the legislative privilege claim is not ripe until the plaintiffs actually pose questions to the legislators, who can then invoke the privilege at that time. In the alternative, the plaintiffs argue that the *Rodriguez* five-factor test has been met. The plaintiffs contend that the court should permit the depositions to proceed, permit the deponent legislators to invoke the privilege, order that the legislators answer the questions posed, accept the deposition transcripts under seal for review *in camera*, and address issues of admissibility at a later stage in the proceedings. In their Reply brief, the Legislators do not address the plaintiffs' arguments and proposed course of action, except to argue that the court should not permit discovery because this is not a federal redistricting case or a federal criminal case.[6]

With respect to the issue of ripeness, the plaintiffs cite several cases in which courts have at least suggested (if not held) that a claim of legislative privilege might not be ripe until the questions are actually posed. *See, e.g.*, *Fl. Assoc. of Rehab. Facilities, Inc.*, 164 F.R.D. at 260;

---

[6] In their Reply, the Legislators also assert that the Complaint does not allege discriminatory intent. That argument bears no relationship to the Complaint, which alleges multiple times that the Tennessee legislature passed the law purposely to discriminate against certain classes of young voters without a meaningful policy justification. (*See, e.g.*, Compl. ¶¶ 84, 89, and 91.)

5

*Perez v. Perry*, SA-11-CV-635 (W.D. Tex. Aug. 1, 2011) (Docket No. 102 in that case). Here, the court hesitates to find that the legislative privilege cannot be invoked without forcing a legislator to testify, because a rule that broad could substantially burden legislators without justification. On the other hand, where there is a reasonable prospect that the *Rodriguez* factors may favor disclosure of at least some of the testimony, permitting the depositions to proceed creates a more thorough record for the court to evaluate. It may also be the case that a legislator chooses to waive the privilege voluntarily at deposition.

Here, the plaintiffs contend that (1) they will likely need to show discriminatory intent to prevail on their Twenty-Sixth Amendment claim, or (2) they may be able to prove their Fourteenth and Twenty-Sixth Amendment claims by showing discriminatory purpose (in addition to, or in lieu of, proving unconstitutionality by other means). The plaintiffs acknowledge that they possess some circumstantial evidence of discriminatory intent in the form of videos of legislative hearings and a "few" emails and documents received in response to their document subpoenas. Nevertheless, as numerous district courts have stated, the practical reality is that officials seldom, if ever, announce that they are pursuing a course of action because of an invidious discriminatory intent (as opposed to a legitimate policy reason). *See Bethune-Hill*, 2015 WL 3404869, at *12; *Veasey*, 2014 WL 1340077. Accordingly, many courts have found that "the availability of alternative evidence will only supplement – not supplant" the legislative history and other publicly available information. *Bethune-Hill*, 2015 WL 3404869, at *12 (citing *Page*, 15 F. Supp. 3d at 667). Here, several legislators claim to have no private records concerning the challenged Voter ID provision, and the General Assembly routinely deletes its members' electronically stored information. Particularly given the dearth of available documentary evidence outside of the legislative history, additional relevant information may

6

come from the legislators themselves.  *See Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 268 (1977) ("In some extraordinary instances the members might be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by privilege."); *Veasey*, 2014 WL 1340077, at *5. Furthermore, this litigation involves a serious constitutional issue: whether Tennessee passed a law intended to suppress the voting rights of Tennessee college students.  The litigation also involves relatively novel claims under the Twenty-Sixth Amendment and a challenge to Tennessee's uniquely restrictive Voter ID law as it relates to college and university student ID cards.  The issues presented also implicate – as do redistricting cases – the potential that a majority political party has attempted to entrench its own power by limiting the ability of certain voters to influence (or, here, participate in) the election process.  The government's conduct is squarely at issue, and, at least at this point, it does not appear that conducting the depositions would have a chilling effect on frank deliberations on public policy matters.[7]

In light of these considerations, the court is persuaded that the plaintiffs' proposed approach is sound.  The plaintiffs may proceed with the depositions, at which the legislators may raise legislative privilege, as warranted.  The Legislators shall answer the questions posed.  The plaintiffs shall file the deposition transcripts under seal for *in camera* review.  The plaintiffs shall not attend the depositions, and the transcripts (and any documents produced subject to a claim of legislative privilege) shall be treated as "attorneys eyes only" documents, with access restricted to the counsel of record, their associates, staff, and assistants working on this litigation.  To the

---

[7] The plaintiffs' Response addresses the five-factor test in detail.  The Legislators' Reply does not address any element other than relevance, and even then only tangentially.  Thus, among other things, there is, to this point, no indication that the Legislators believe that deposing them would somehow chill frank public debate.

7

extent that the plaintiffs intend to rely on the Legislators' answers to questions for which the legislators have invoked the privilege, the plaintiffs will need to move for disclosure of that information. The Legislators' testimony shall not constitute waiver of the legislative privilege, to the extent that the testimony is otherwise subject to that privilege.

Although the depositions will proceed, the court specifically reserves decision as to which, if any, of the topics covered in the deposition will result in admissible testimony. That decision will likely turn on the applicable legal standard(s), how probative the testimony is relative to that standard (or standards), and the degree to which the testimony intrudes upon legislative deliberations. Under the circumstances of this case, these are considerations that are not suitable for resolution in the abstract.[8] The plaintiffs' attorneys are specifically advised that the deposition testimony shall not be disseminated to the plaintiffs, the press, or anyone else. The subject matter of the testimony is highly sensitive and potentially privileged, at least in part. Accordingly, the court explicitly directs that public disclosure of the testimony (and any related records) is not authorized unless and until the court specifically orders otherwise.

For the reasons explained herein, the Motion to Quash is **DENIED**.

It is so **ORDERED**.

Enter 12th day of August 2015.

_____
ALETA A. TRAUGER
United States District Judge

---

[8] With respect to the applicable legal standard, the parties do not appear to agree about whether the constitutionality of the challenged provisions turns on the law's intent, effect, or both. Many of the cases referenced by both parties concern statutory claims under the Voting Rights Act or claims under the Equal Protection Clause premised on race and gender discrimination. The parties have not directly briefed whether, relative to those cases, the same or different standards should apply to the Fourteenth and Twenty-Sixth Amendment claims at issue here.