## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| NASHVILLE STUDENT ORGANIZING COMMITTEE, JUSTIN BAUTISTA-JONES, TYSHAUNDA BLANCHE, JARRETT HARPER, BREONNA FRIERSON, SETH BARRETT, MARQUISHA PALMER, KIERRA WARE, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| TRE HARGETT, in his official capacity as Tennessee Secretary of State, and MARK GOINS, in his official capacity as Coordinator of Elections for the State of Tennessee, | ) ) ) ) ) ) |
| Defendants. | ) ) |

**Case No. 3:15-cv-00210**

**Judge Aleta A. Trauger**
**Magistrate Judge John S. Bryant**

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

---

Come the Defendants, Tre Hargett, in his official capacity as Tennessee Secretary of State, and Mark Goins, in his official capacity as Coordinator of Elections for the State of Tennessee, by and through their counsel of record, the Attorney General and Reporter for the State of Tennessee, and hereby submit this memorandum of law in support of their motion to dismiss Plaintiffs' First Amended Complaint in its entirety and with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### INTRODUCTION

In 2011, the Tennessee General Assembly adopted legislation requiring Tennessee voters to present a valid form of photo identification in order to vote in-person in elections in Tennessee. Plaintiffs have filed suit—ostensibly not to challenge the constitutionality of the voter photo ID

requirement itself—but instead, to challenge as unconstitutional the Tennessee General Assembly's judgment as to which categories of photo IDs are acceptable.

As a matter of public policy, the Tennessee legislature has determined that college and university student IDs are not a valid form of photo ID for purposes of voting. Plaintiffs are all college students who possess a college student ID, but who allegedly do not possess one of the accepted forms of photo ID. Like other Tennessee residents, Plaintiffs who are able to establish their citizenship and residency are eligible to receive a free photo ID for purposes of voting. Plaintiffs do not allege that were unable to obtain the free photo ID, or even that they attempted to obtain it. Instead, they assert that the legislature's decision to exclude college and university student IDs, while including other forms of ID such as state university faculty and staff IDs, discriminates against them on the basis of age and unduly burdens their right to vote in violation of the Twenty-Sixth Amendment and the Equal Protection Clause of the Fourteenth Amendment.

Upon closer analysis, it becomes readily apparent that Plaintiffs' claims are nothing more than an attempted end-run around *Crawford v. Marion County Election Board*, 553 U.S. 181 (2000). Just as Plaintiffs argue in this case, the plaintiffs in *Crawford* argued that they did not possess the required identification and that Indiana's voter photo ID law unduly burdened their right to vote in violation of the Equal Protection Clause of the Fourteenth Amendment. *Id*. at 187, 198. As this Court is aware, the Supreme Court ultimately concluded that Indiana's voter photo ID law did not impose "excessively burdensome requirements" on any class of voters and upheld the law against a facial constitutional challenge. *Id*. at 202.

Tennessee's voter photo ID Act is virtually identical to the act upheld by the Supreme Court in *Crawford*: it requires all citizens voting in person to present a photo ID issued by the government; it contains exceptions for persons living and voting in a state-licensed facility such

2

as a nursing home; it allow voters who are indigent or have a religious objection to being photographed to cast a ballot after executing an affidavit; it provides for a free state-issued photo ID to qualified voters able to establish their residence and identity; and, it allows a voter unable to present a photo ID to vote a provisional ballot that will be counted if an appropriate photo ID is brought to the county election commission's office within two business days of an election. *See Crawford*, 553 U.S. at 185-186 (describing provisions of Indiana "Voter ID Law"); *see also Green Party of Tenn. v. Hargett*, No. 2:13-cv-224, 2014 U.S. Dist. LEXIS 102706, *22 (E.D. Tenn. Feb. 20, 2014) (finding Tennessee's act to be virtually identical to Indiana's act); *Frank v. Walker*, 768 F.3d. 744, 746 (7th Cir. 2014) (finding that Wisconsin law differed from Indiana's law, but not in ways that matter under analysis in *Crawford* or that establish that the burden of voting in Wisconsin is significantly different from the burden in Indiana).

Consistent with the Supreme Court's holding in *Crawford*, compliance with the requirements of Tennessee's voter photo ID law "imposes only a limited burden" on Tennessee voters, including Plaintiffs. 553 U.S. at 203 (quoting *Burdick v. Takushi*, 504 U.S. 428, 439 (1992)). The General Assembly's policy judgment that student IDs issued by state colleges and universities are not valid forms of photo ID for voting purposes does not impose any additional burden on Plaintiffs. They, like other Tennessee residents, remain eligible to obtain a free photo ID if they lack an otherwise acceptable form of photo ID. And that policy judgment is supported by the same interest in preventing voter fraud that the Supreme Court found sufficient in *Crawford*. To the extent that Plaintiffs seek to avoid *Crawford* by asserting a novel claim under the Twenty-Sixth Amendment, that claim should be dismissed because the exclusion of student IDs does not exclusively or even disproportionately affect the category of individuals protected under the Twenty-Sixth Amendment—i.e., 18 to 20 year olds. Nor do Plaintiffs' allegations support an

inference of intentional discrimination against 18 to 20 year olds. Accordingly, Plaintiffs' amended complaint fails to state a claim under 42 U.S.C. § 1983 for violation of any federal constitutional right and such complaint should be dismissed.

**FACTUAL BACKGROUND**

**A.     Tennessee's Voter Photo ID Act**

Tennessee's Voter Photo ID Act (the "Act") was adopted by the Tennessee General Assembly as Public Chapter 323 on May 20, 2011, and was subsequently signed into law by the Governor on May 30, 2011. The Act provided that it would go into effect as of January 1, 2012. Since the Act went into effect, Tennessee has conducted five federal elections (March 2012 Presidential Preference Primary, August 2012 Primary Election, November 2012 General Election[1], August 2014 Primary Election, and November 2014 General Election); four state elections (August 2012 Primary Election, November 2012 General Election, August 2014 Primary Election, and November 2014 General Election[2]) and four county elections (March 2012 Primary Election, August 2012 General Election, May 2014 Primary Election, and August 2014 General Election). A valid photo ID was required to vote in-person at each of these elections.

The provisions of the Act are currently codified at Tenn. Code Ann. § 2-7-112. The Act requires that a voter provide "evidence of identification" in order to vote in person. Tenn. Code Ann. § 2-7-112(a)(1). "Evidence of identification" is defined as:

(1) A Tennessee driver license;

(2) (A)  Except as provided in subdivision (c)(2)(B), a valid identification card issued by the state of Tennessee, or the United States where authorized by law to issue personal identification; provided, that such identification card contains a photograph of the voter;

---

[1] The November 2012 general election included the Presidential Election.

[2] The November 2014 general election included the gubernatorial election.

4

(B) An identification card issued to a student by an institution of higher education containing a photograph of a student shall not be evidence of identification for purposes of verifying the person's identification on the application for ballot;

(3) A valid identification card issued pursuant to § 55-50-336;

(4) A valid United States passport;

(5) A valid employee identification card issued by the state of Tennessee, or the United States where authorized by law to issue employee identification; provided, that such identification card contains a photograph of the voter;

(6) A valid United States military identification card; provided, that such identification card contains a photograph of the voter; or

(7) An employee identification card for retired state employees authorized pursuant to § 8-50-118.

Tenn. Code Ann. § 2-7-112(c). Additionally, an "identification card issued by a county or municipality or entity thereof, including a public library, containing a photograph" is excluded from the definition of "evidence of identification." Tenn. Code Ann. § 2-7-112(g).

If a voter is unable to present valid evidence of identification as specified in the Act, the voter is allowed to vote a provisional ballot. Tenn. Code Ann. § 2-7-112(e)(1). At the same time, the voter is given a written statement that specifies the voter has until the second business day after the election to provide evidence of identification and the voter is required to sign and return the statement along with the provisional ballot. *Id.* The voter's provisional ballot will then be counted if the voter presents valid evidence of identification to the county administrator of elections or the administrator's designee at the county election commission office. Tenn. Code Ann. § 2-7-112(e)(5). The voter is also required to sign an affidavit containing, among other things, a statement affirming under penalty of perjury that the voter is the same individual that cast the provisional ballot. Tenn. Code Ann. § 2-7-112(e)(6). In conjunction with these provisions of the Act, Tenn. Code Ann. § 55-50-336 provides for a free state-issued photo ID to qualified voters able to establish their residence and identity.

5

The Act also contains certain exceptions. Tenn. Code Ann. § 2-7-112(f) provides that a voter who is "indigent and unable to obtain proof of identification without payment of a fee or who has a religious objection to being photographed" can execute an affidavit of identity on a form provided by the county election commission and then proceed to vote. Additionally, the Act does not apply to those persons who have been hospitalized in the county of residence within twenty days of an election, Tenn. Code Ann. § 2-6-401, or to persons who are full-time residents of any licensed nursing home, home for the aged, or similar licensed institution providing relatively permanent domiciliary care in the county of the voter's residence. Tenn. Code Ann. § 2-6-601. Finally, the Act only applies to persons who vote in-person and not by absentee ballot. Tenn. Code Ann. § 2-7-112(a)(1). Tenn. Code Ann. § 2-6-201 sets forth the circumstances under which a person may vote by absentee ballot, including if the voter is outside the county on election day or is over sixty years of age.[3]

### B. Factual Allegations

Plaintiff Nashville Student Organizing Committee ("NSOC") is a social justice organization organized as a nonprofit corporation under Tennessee's Nonprofit Corporation Act. (DE 36 Page ID# 296297). NSOC is "run by college and university students from Nashville-area public and private colleges and university" and advocates for social justice and civil rights. *Id.* NSOC alleges that it "has opposed the adoption of the Tennessee voter ID law, and in particular the exclusion of student IDs from the list of accepted voter IDs." *Id.* NSOC further alleges that it has engaged in education efforts on the law. *Id.*

Plaintiffs Justin Bautista-Jones, Tyshaunda Blanche, and Breonna Frierson are all 19 years old, sophomores at Fisk University, and registered to vote in Tennessee. (*Id.* at 297-298). Plaintiff

---

[3] This exception only applies until July 1, 2017. After that date, only persons sixty-five years of age or older may request to vote absentee. *See* Tenn. Code Ann. § 2-6-201(5)(A).

6

Jarrett Harper is 30 years old, a junior at Fisk University, and registered to vote in Tennessee. (*Id.* at 298). Plaintiff Seth Barrett is 18 years old, a freshman at Belmont University, and has allegedly submitted a voter registration application to the Davidson County Election Commission. (*Id.*). Plaintiffs Marquisha Palmer and Kierra Ware are 18 years old, freshmen at Tennessee State University, and have also allegedly submitted voter registration applications to the Davidson County Election Commission. (*Id.* at 298-299). All of these individual Plaintiffs allege that they do not possess any of the accepted forms of voter ID under Tennessee's voter ID law. (*Id*. at 297-99). Plaintiffs do not allege that they were unable to obtain a free photo ID for voting purposes, or even that they attempted to obtain the free photo ID.

In their Amended Complaint, Plaintiffs challenge the facial constitutionality of Tennessee's voter photo ID act on two grounds. First, they argue that by excluding the use of college and university student IDs as a valid form of voter ID, the act intentionally discriminates against young voters in violation of the Twenty-Sixth Amendment to the federal constitution. (*Id.* at 323-325). Second, Plaintiffs Palmer and Ware, both of whom are students at a public university, allege that because their student IDs are, in all material respects, identical to the IDs of current and retired faculty and staff, there is no rational basis to exclude their student IDs and to include current and retired faculty and staff IDs as a valid form of voter ID. Accordingly, Plaintiffs Palmer and Ware assert that the exclusion of public college and university student IDs violates their rights under the Equal Protection Clause of the Fourteenth Amendment. (*Id*. at 325-327).

## STANDARD OF REVIEW

### A.      Standard of Review for Rule 12(b)(6) Motion to Dismiss

When considering a Rule 12(b)(6) motion, a Court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable

to the nonmoving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co*., 975 F.2d 252, 254 (6th Cir. 1992). However, legal conclusions or unwarranted factual inferences need not be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Furthermore, in order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005); *Wittstock v. Mark A Van Sile, Inc*., 330 F.3d 889, 902 (6th Cir. 2003).

The United States Supreme Court has recently addressed the appropriate standard that should be applied in considering a motion to dismiss for failure to state a claim, stating in part:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals, observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009) (citations omitted). Thus, while the factual allegations in a complaint need not be detailed, they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-95 (2007)).

8

## B. Standard of Review for Facial Constitutional Challenge to Election Law Statute

Plaintiffs have raised a facial challenge[4] as to the constitutionality of the exclusion of private and public college and university student IDs as a valid form of photo identification under Tennessee's Voter Photo ID Act. "[A] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully," *United States v. Salerno*, 481 U.S. 739, 745 (1987), and the Supreme Court and the Sixth Circuit Court of Appeals have both recognized that a claimant who makes a facial attack on a law is requesting "strong medicine." *Fieger v. Michigan Supreme Court*, 553 F.3d 955, 960-61 (6th Cir. 2009), *cert. denied*, 130 S.Ct. 1048 (U.S. 2010) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

> "[F]ederal courts do not lightly uphold facial challenges" because such efforts do not seek to invalidate laws in concrete, factual settings but to "leave nothing standing." *Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008) (en banc). Further, "[c]laims of facial invalidity often rest on speculation[,] . . . raise the risk of premature interpretation[,] . . . run contrary to the fundamental principle of judicial restraint[,] . . . [and] threaten to short-circuit the democratic process." *Wash. State Grange v. Wash. State Republican Party*, --- U.S. ---, 128 S.Ct. 1184, 1191, 170 L.Ed.2d 151 (2008) (citations omitted). For these reasons, facial invalidation of a statute is a remedy that courts employ "sparingly and only as a last resort." *Broadrick*, 413 U.S. at 613, 93 S.Ct. 2908.

*Id*. Thus, before a federal court will announce such a judgment, they generally insist that the claimant show one of two things: (1) that there truly are "no" or at least few "circumstances" in "which the Act would be valid"; or (2) that a court cannot sever the unconstitutional textual

---

[4]A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself. *U.S. v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000). Thus, a party who asserts a facial challenge to a statute is seeking not only to vindicate his own rights, but also those of others who may be adversely impacted by the statute. *Horton v. City of St. Augustine*, 272 F.3d 1318, 1331 n. 12 (11th Cir. 2001) (citing *City of Chicago v. Morales*, 527 U.S. 41, 55 n. 22 (1999)). Furthermore, the Supreme Court has held that where the relief requested would "reach beyond the particular circumstances of these plaintiffs" they must "satisfy our standards for a facial challenge to the extent of that reach." *John Doe No. 1 v. Reed*, 130 S.Ct. 2811, 2817 (2010) (citing *United States v. Stevens*, 130 S.Ct. 1577, 1587 (2010)). Here, Plaintiffs' amended complaint seeks a declaration that Tennessee's voter photo ID act violates the Fourteenth and Twenty-Sixth Amendment to the United States Constitution and seeks to enjoin the Defendants to require them to accept student ID cards issued by *any* accredited, not-for-profit postsecondary educational institution in Tennessee. (D.E. 36 Amended Complaint).

provisions of the law or enjoin its unconstitutional applications. *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009), *cert. denied*, 130 S.Ct. 362 (U.S. 2009) (citing *Salerno*, 481 U.S. at 745 and *Wash. State Grange*, 128 S.Ct. at 1190); *see also Crawford*, 553 U.S. at 200. "To do otherwise would amount to a judicial trespass – a court's striking of a law in all of its applications even though the legislature has the prerogative and presumed objective to regulate some of them." *Holder*, 557 F.3d at 335.

In making any judgment about the constitutionality of the statutes in question, it should be kept in mind that state legislatures are presumed by federal courts to have acted constitutionally in making laws. *McDonald v. Bd. of Election Comm'n*, 394 U.S. 802, 809 (1969); *Harford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy*, 740 F.2d 1362, 1366 (6th Cir. 1984).

> A statute will be presumed to be constitutional by the courts unless the contrary clearly appears; and in case of doubt every possible presumption not clearly inconsistent with the language and subject matter is to be made in favor of the constitutionality of legislation. Every reasonable presumption or intendment must be indulged in favor of the validity of an act and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity. A statute is presumed to be constitutional and it will not be declared unconstitutional unless clearly so, or so beyond a reasonable doubt.

*City of Ann Arbor, Mich. v. Northwest Park Constr. Corp.*, 280 F.2d 212, 223 (6th Cir. 1980) (internal citations omitted).

The United States Supreme Court has recognized that states have the authority to substantially regulate elections to ensure that they are fair, honest, and orderly through the enactment of election codes. *Storer v. Brown*, 415 U.S. 724, 730 (1974). Where, as here, it is alleged that a state's election law violates the right to vote under the United States Constitution, the Supreme Court has established a framework for examining such laws. Under that framework, a court must weigh the character and magnitude of the injury to the rights protected by the First

and Fourteenth Amendments against the state's interests in justifying the requirements imposed by its election laws. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

The level of scrutiny applied to the state's requirements depends on the extent to which the challenged regulation burdens First and Fourteenth Amendment rights. *Burdick*, 504 U.S. at 434. If the state's requirements severely restrict those rights, then the requirements may be upheld only if they are narrowly tailored to advance a compelling state interest. *Id.* If, however, state law imposes only "reasonable," "nondiscriminatory" restrictions upon the First and Fourteenth Amendment rights of voters, the state's important regulatory interests are generally sufficient to justify the restrictions imposed. *Id.*; *see also Anderson*, 460 U.S. at 788. Each case, however, must be resolved on its own facts, after due consideration is given to the practical effect of election laws of a given state, viewed in their totality. *Clements v. Fashing*, 457 U.S. 957, 963 (1982).

## ARGUMENT

## I. PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE TWENTY-SIXTH AMENDMENT.

In Count I of the Amended Complaint, Plaintiffs advance the novel claim that the State's policy decision to exclude student ID cards from the category of photo-ID cards that may be used to vote violates the Twenty-Sixth Amendment to the United States Constitution. (DE 36 Page ID# 325). That claim fails for at least two primary reasons. First, Plaintiffs fail to allege that the exclusion at issue applies solely or even disproportionately to the class of individuals the Twenty-Sixth Amendment was intended to protect – 18 to 20 year olds. Second, Plaintiffs' allegations do not support a reasonable inference of intentional discrimination on the basis of the Plaintiffs' age.

11

**A.      The State's Exclusion of Student ID Cards Does Not Apply Exclusively or Disproportionately to 18 to 20 Year Olds.**

Not surprisingly, given the infrequency of claims brought under the Twenty-Sixth Amendment, neither the Sixth Circuit nor the U.S. Supreme Court has determined the legal standard that should apply in evaluating such claims. However, both the history surrounding the ratification of the Twenty-Sixth Amendment and what little relevant judicial precedent exists demonstrate that the Twenty-Sixth Amendment had a limited purpose: to enfranchise 18 to 20 year olds so that states would not be forced to administer dual voting systems. *See* S. Rep. 92-96, 1971 U.S. Code Cong. & Admin. News, p. 366–375.

The Twenty-Sixth Amendment became part of the U.S. Constitution on July 1, 1971, after a long debate that began during World War II to lower the voting age from twenty-one to eighteen. On November 13, 1942, President Franklin D. Roosevelt signed legislation lowering the draft age to eighteen, which prompted proposed legislation in Congress to similarly lower the voting age. *See* Thomas H. Neale, *The Eighteen Year Old Vote: The Twenty-Sixth Amendment and Subsequent Voting Rates of Newly Enfranchised Age Groups* at CRS-4 (Congressional Research Service, May 20, 1983) (copy attached as Exhibit A). However, no action was taken on this proposed legislation or any subsequent legislation, despite growing public support and approval for lowering the voting age to eighteen. *Id.* at CRS-6-CRS-8.

Finally, due in large part to demonstrations over the country's involvement in the Korean and Vietnam Wars, in 1970 Congress passed legislation extending the Voting Rights Act of 1965, and included an amendment lowering the voting age to eighteen for all federal, state and local elections. *See* P.L. 91-285, 84 Stats. 314 (1970). This voting-age provision was immediately challenged in federal court, and the Supreme Court ultimately concluded that provision was valid

as applied to federal elections, but that Congress could not change the voting age in state and local elections by statute. *See Oregon v. Mitchell*, 400 U.S. 112, 118 (1970).

Given the Supreme Court's decision in *Mitchell*, states faced the costly and administratively-burdensome prospect of administering a dual voting system. *See* Neale, *supra*, at CRS-12 (citing Congressional Quarterly, Inc. Congressional Quarterly Almanac, 92nd Congress, 1st Session, 1971. Washington, 1972. P. 475). Consequently, a resolution to amend the Constitution to lower the voting age to eighteen was promptly introduced in Congress and passed both Houses by the required two-thirds majority on March 23, 1971. *Id*. at CRS-13. Five states, including Tennessee, ratified the proposed amendment that same day, and ratification was complete within just a few months. *Id*. at CRS-14.

Section 1 of the Twenty-Sixth Amendment provides: "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age." Given the events leading up to the ratification of the Twenty-Sixth Amendment, and the speed and ease with which ratification occurred, it is evident that the Twenty-Sixth Amendment was intended to have only a limited effect: to enfranchise 18 to 20 year olds. Contrary to Plaintiffs' assertions, it was never intended as a broad-based prohibition on all age discrimination in voting.

Consistent with that understanding, the few courts that have considered Twenty-Sixth Amendment claims have found the amendment violated only when a law burdening the right to vote applied exclusively or disproportionately to 18 to 20 year olds. For example, less than two months after ratification of the Twenty-Sixth Amendment, the California Supreme Court held that "for state officials to treat *minor citizens* differently from adults for any purpose related to voting

would violate the Twenty-Sixth Amendment to the United States Constitution." *Jolicoeur v. Mihaly*, 488 P.2d 1, 2 (Ca. 1971) (emphasis added).

In *Jolicoeur*, county registrars of voters had refused to register the plaintiffs, who were unmarried minors, because they did not register at their parents' address, in reliance on an opinion of the California Attorney General opining that "for voting purposes the residence of an unmarried minor (whether student or not) *** will normally be his parents' home regardless of where the minor's present or intended future habitation might be." *Id*. at 3. In making its ruling, the California Supreme Court referenced both the legislative history of the amendment and the nation's history as establishing that the Twenty-Sixth Amendment was intended to compel adult treatment of minors for voting purposes. *Id*. at 5-7 (holding that "[r]espondents' *refusal to treat petitioners as adults for voting purposes violates the letter and spirit of the Twenty-Sixth Amendment.*") (emphasis added).

Shortly thereafter, a federal district court in *Ownby v. Dies*, 337 F. Supp. 38, 39 (E.D. Tex. 1971) found that Article 5.08(m) of the Texas Election Code, which provided for a determination of voting residency of persons under twenty-one years of age on a different basis than persons twenty-one years of age and older, violated the Equal Protection Clause of the Fourteenth Amendment and "abridge[d] the right to vote of persons who are eighteen but not yet twenty-one years of age in violation of the Twenty-Sixth Amendment to the United States Constitution."

Laws applying to college or university dormitory residents, who are more likely than other college and university students to be between the ages of 18 and 20, have also been held to violate the Twenty-Sixth Amendment. In *United States v. Texas*, for example, the district court found that the refusal of a county registrar to register dormitory students at a historically black college violated the students' rights under the Twenty-Sixth Amendment, as well as the Fourteenth and

14

Fifteenth Amendments. 445 F. Supp. 1245, 1262, (S.D. Tex. 1978)(*summary affirmance sub nom. Symm v. U.S.*, 439 U.S. 1105 (1979)). Tellingly, in *Walgren v. Bd. of Selectmen of Town of Amherst*, 519 F.2d 1364, 1367 (1st Cir. 1975), the First Circuit *rejected* a Twenty-Sixth Amendment claim to a policy affecting primarily dormitory residents in part because of "the speculativeness of determining whether 18-20 year old voters were disproportionately burdened."

Here, Plaintiffs assert that the refusal to accept college student IDs as a valid form of ID for voting purposes violates the Twenty-Sixth Amendment because it denies or abridges their right to vote on the basis of age. (DE 36 Page ID# 323-325). That argument fails, and Plaintiffs' Twenty-Sixth Amendment should therefore be dismissed, for at least two reasons. First, the statutory provision excluding state college or university IDs from the acceptable forms of photo ID applies to *all students*, many if not most of whom likely fall outside the class of 18 to 20 year olds who are protected by the Twenty-Sixth Amendment. The Amended Complaint contains no allegations, much less any plausible ones, that the exclusion of student IDs affects only or even disproportionately 18 to 20 year olds. To the contrary, national data show that a majority of students enrolled in postsecondary institutions are in fact over the age of 21. *See, e.g.*, National Center for Education Statistics, Digest of Education Statistics (2013), available at http://nces.ed.gov/programs/digest/d13/tables/dt13_303.40.asp.

Second, even assuming that the Twenty-Sixth Amendment could properly be construed to prohibit all discrimination in voting on the basis of age, Tennessee's exclusion of student photo IDs is not an age-based classification. As just explained, it applies to all students equally, not solely those of a certain age or under a certain age. There are students attending Tennessee private and public colleges and universities of all ages, and the exclusion of student IDs as a valid form of

15

photo ID for purposes of voting applies equally to each of them.[5]   The real thrust of Plaintiffs'

claim is that the exclusion of student IDs "intentionally discriminates against *college and*

*university students* in the state" and "abridges *college and university students'* right to vote."  (DE

36 Page ID# 308, 324) (emphasis added).   Consequently, if Plaintiffs have been denied the right

to vote (or had their right abridged), it is not because of *age*, but because of the allegedly

discriminatory effects the voter photo ID act has been imposed on them as *students*.  *See Bright v.*

*Baesler*, 336 F.Supp. 527 (E.D. Ky. 1971) (finding that plaintiffs had failed to state a claim under

the Twenty-Sixth Amendment where more rigorous domiciliary requirements were applied to all

students at University of Kentucky); *Hill v. Gunn*, 367 F.Supp.2d 532, 536 (S.D.N.Y. 2005)

(finding plaintiff failed to state claim under Twenty-Sixth Amendment because plaintiff alleged

deprived of right to vote not because of age, but because of voting machine malfunction and

election workers refusal to allow plaintiff to re-vote).   In other words, it is Plaintiffs' status as

*college students* and not their *age* that forms the basis of their claim.   Because the Amended

Complaint fails to allege that Tennessee's exclusion of student photo IDs applies exclusively or

disproportionately to 18 to 20 year olds, or is in any way based on age, Plaintiffs' claim under the

Twenty-Sixth Amendment fails as a matter of law and must be dismissed.

**B.**    **The Amended Complaint Fails to Adequately Allege Intentional Age-Based**
         **Discrimination.**

As explained above, the exclusion of student photo IDs from the acceptable forms of photo

IDs for purposes of voting on its face applies to all students and does not discriminate on the basis

of age, much less the relevant ages of 18 to 20 year olds.   Plaintiffs summarily allege that the

exclusion was part of a deliberate scheme to suppress the vote of young people, but the Amended

---

[5] This fact is demonstrated by the Plaintiffs themselves as their ages range from eighteen to thirty.  *See* DE 36 Page ID# 297-299.

Complaint is void of any allegations that would support a claim of intentional age-based discrimination. Plaintiffs argue that there are certain aspects of the overall voting scheme from which this Court can *infer* that the Act was intended to discriminate on the basis of age. Specifically, Plaintiffs cite to the following:

- Voters aged sixty-five or older are allowed to vote absentee;
- When it adopted the voter photo ID act, the legislature provided that voters aged sixty or older were allowed to vote absentee;
- The photo IDs of current and retired faculty and staff of public universities, who presumably are older, are accepted as valid forms of photo ID;
- The photo IDs of retired state employees are accepted as valid forms of photo ID; and
- The assumption that older voters have more forms of photo identification.

(DE 36 Page ID# 323-25).

A mere inference, without more, is insufficient to establish that an otherwise facially neutral statute was intended to discriminate against voters on the basis of age. Moreover, some of the "facts" cited by Plaintiffs cannot be used to support their inference that the voter photo ID act discriminates on the basis of age. For example, the provision allowing voters aged sixty-five or older to request to vote absentee has been part of Tennessee's electoral scheme since 1973, long before the idea of photo identification for voting purposes was ever even considered by the legislature. *See* Public Acts 1973, ch. 399 § 1. And, the provision lowering that age to sixty years is only in effect until July 1, 2017, at which point it returns to sixty-five years of age. *See* Tenn. Code Ann. § 2-6-201(5)(A). Additionally, Plaintiffs' assumption that older voters have more forms of photo identification is not supported by any factual allegations in their amended complaint, and is contrary to the evidence presented in *Crawford* (the ages of the individual plaintiffs who did not possess a valid photo ID ranged from 65 to 85). *See Indiana Democratic Party v. Rokita*, 458 F.Supp.2d 775, 798 (S.D. Ind. 2006). Most importantly, none of the legislative history cited by Plaintiffs in their Amended Complaint contains any factual allegations

17

demonstrating that the legislature, in enacting the voter photo ID act, intentionally sought to discriminate against voters on the basis of their age. (*See* DE 36 Page ID# 299-311). Accordingly, any inference of State discrimination against Plaintiffs on the basis of their age is entirely improper.

II.    **PLAINTIFFS' AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.**

Pursuant to Tenn. Code Ann. § 2-7-112(c)(5) and (7), Tennessee accepts the photo identification cards of current and retired faculty and staff of Tennessee public colleges and universities, as those cards constitute employee photo ID cards issued by the State of Tennessee. Tennessee does not, however, accept photo identification cards issued to students at Tennessee public colleges and universities. Plaintiffs Palmer and Ware, who are students at Tennessee State University, allege that there is no real difference, physical or otherwise, between the student ID cards and the faculty and staff ID cards. As such, Plaintiffs Palmer and Ware argue that there is no rational basis for excluding their student ID cards as an accepted form of photo ID for purposes of voting and that such exclusion violates their rights under the Equal Protection Clause.

While Plaintiffs have couched their Equal Protection Clause claim as one where they are allegedly being treated differently from similarly situated individuals (current and retired faculty and staff) without a rational basis, at its core, Plaintiffs' claim is that because they do not currently possess one of the accepted forms of photo ID for voting, they are being treated differently from voters who do have an accepted form—including current and retired faculty and staff of Tennessee state colleges and universities. This claim is no different than the claim asserted by the plaintiffs in *Crawford* and in subsequent cases upholding the constitutionality of voter photo ID laws under the Fourteenth Amendment. *See Frank v. Walker,* 768 F.3d 744 (7th Cir. 2014); *Common Cause v. Billups*, 554 F.3d 1340 (11th Cir. 2009). The individual plaintiffs in these cases were, like Plaintiffs here, registered voters who did not possess an acceptable form of photo identification

18

and who alleged that they would be required to make an additional effort to obtain a valid ID that is not required of voters possessing an acceptable form of ID in violation of their right to vote under the Equal Protection Clause. *See Crawford*, 553 U.S. at 198; *Common Cause v. Billups*, 554 F.3d at 1351; *Walker*, 768 F.3d at 746.

In each of these cases, the court determined that the appropriate test when addressing an Equal Protection challenge to a law affecting a person's right to vote is to "weigh the asserted injury to the right to vote against the precise interests put forward by the State as justification for the burden imposed by the rule" *i.e.*, the flexible standard from *Anderson* and *Burdick*. *Crawford*, 553 U.S. at 190 (internal quotation marks omitted); *Walker*, 768 F.3d at 745-46; *Common Cause*, 554 F.3d at 1352-53. Applying the *Anderson-Burdick* test, the court in each case concluded that the prevention of in-person voter fraud and the preservation of public confidence in the integrity of elections justified the photo ID requirement, even though some voters who did not have an acceptable form of photo ID would be required to spend time to acquire necessary documents and stand in line at a public agency to get one. "For most voters who need them, the inconvenience of making a trip to the [department of motor vehicles], gathering the required documents, and posing for a photograph surely does not qualify as a substantial burden on the right to vote, or even represent a significant increase over the usual burdens of voting." *Crawford*, 553 U.S. at 198; *Walker*, 768 F.3d at 747; *Common Cause*, 554 F.3d at 1354-55.

Applying this same flexible standard to Plaintiffs' Equal Protection Claim, it is readily apparent that the State's interests are sufficiently weighty to justify any limitations imposed on Plaintiffs' right to vote. Plaintiffs argue that the burden imposed on their right to vote is one resulting from the exclusion of student ID cards versus the inclusion of current and retired faculty and staff ID cards; however, this argument is only tangential to the actual burden imposed by

19

Tennessee's voter photo ID act—the requirement that Plaintiffs present a valid form of photo identification in order to vote in-person. As previously discussed, Tennessee's voter photo ID act applies to all qualified Tennessee voters seeking to vote in-person. It also extends to every Tennessee citizen an equal opportunity to get a valid photo ID. *See* Tenn. Code Ann. § 2-7-112(c)(3) and § 55-50-336. Any burden imposed on Plaintiffs Palmer and Ware in getting this free photo ID is no more burdensome than that imposed on similar voters lacking a valid form of photo ID in *Crawford*—particularly given that neither Palmer nor Ware allege in the Amended Complaint that they have attempted to obtain the free photo ID and failed, or that the burdens they would face in obtaining the free photo ID are substantially different or greater than those faced by the plaintiffs in *Crawford* and subsequent cases. *See* DE 36 Page ID# 276, 278-79.

The Supreme Court in *Crawford* found that the inconveniences associated with obtaining the free photo ID did not qualify as a substantial burden on the right to vote and were justified by the state's interest in preventing voter fraud and promoting public confidence in the electoral system. 553 U.S. at 202-203. Similarly, the Tennessee General Assembly's compelling interest in protecting the ballot box against the risk of voter fraud justifies the imposition of inconveniences associated with obtaining the free photo ID in Tennessee. *See City of Memphis v. Hargett*, 414 S.W.3d 88, 106 (Tenn. 2013). The fact that Tennessee has made the policy decision to include certain forms of photo ID as acceptable for purposes of voting while excluding other forms does not in any way change this analysis, particularly since Tennessee's voter photo ID act makes available to every TN citizen the equal opportunity to obtain a free photo ID. Consequently, Plaintiffs argument that the inclusion of faculty and staff IDs and the exclusion of student IDs is irrelevant to the analysis of Plaintiffs' Equal Protection claim under the *Anderson-Burdick* test.

20

In short, Tennessee's voter photo ID law is a generally applicable, nondiscriminatory voting regulation supported by valid neutral justifications and the application of the statute to Tennessee voters, including Plaintiffs, is amply justified by the State's compelling interest in protecting the integrity of the electoral process. *See Crawford*, 553 U.S. at 204; *City of Memphis*, 414 S.W.3d at 106. Accordingly, Plaintiffs' claim under the Equal Protection Clause fails.

Plaintiffs' equal protection challenge also plainly fails under a rational basis standard of review. "The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all persons similarly situated should be treated alike." *Doe v. Mich. Dept. of State Police,* 490 F.3d 491, 502 (6th Cir.2007)(internal quotation marks and citation omitted). The rational-basis standard is "highly deferential; courts hold statues unconstitutional under this standard of review only in rare or exceptional circumstances." *Ullmo v. Ohio Tpk. & Infrastructure Comm'n*, No. 1:15 CV 822, 2015 WL 5055867, *7 (N.D. Ohio Aug. 25, 2015) (quoting *Doe*, 490 F.3d at 503-04).

A party seeking to overturn a legislative enactment under the Equal Protection Clause of the Fourteenth Amendment has the burden to negate every conceivable basis which might support it. *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973). "There is a rational basis for a governmental classification if the distinctions made by that classification 'have some relevance to the purpose for which the classification is made.'" *Darks v. Cincinnati,* 745 F.2d 1040, 1042–43 (6th Cir.1984) (quoting *Marshall v. United States,* 414 U.S. 417, 422 (1974)). On rational basis review, the policy being challenged bears "a strong presumption of validity." *F.C.C. v. Beach Commcn's, Inc.,* 508 U.S. 307, 315 (1993). Moreover, because policymakers are not required to articulate their justification for a policy, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the

21

legislature." *Id.* at 316. "[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Id.*

The Sixth Circuit has explained the relationship between facial constitutional challenges to state laws and the Fourteenth Amendment as follows:

> A first requirement of any law, whether under the Due Process Clause or Equal Protection Clause, is that it rationally advance a legitimate government policy. Two words ("judicial restraint") and one principle (trust in the people that "even improvident decisions will eventually be rectified by the democratic process") tell us all we need to know about the light touch judges should use in reviewing laws under the standard. So long as judges can conceive of some plausible reason for the law—*any* plausible reason, even one that did not motivate the legislators who enacted it—the law must stand, no matter how unfair, unjust, or unwise the judges may consider it as citizens.

> ... [R]ational basis review does not permit courts to invalidate laws every time a new and allegedly better way of addressing a policy emerges, even a better way supported by evidence and ... by judicial factfinding. If legislative choices may rest on "rational speculation unsupported by evidence or empirical data," it is hard to see the point of premising a ruling on unconstitutionality on factual findings made by one unelected federal judge that favor a different policy. Rational basis review does not empower federal courts to "subject" legislative line-drawing to "courtroom" factfinding designed to show that legislatures have done too much or too little.

*DeBoer v. Snyder,* 772 F.3d 388, 404–405 (6th Cir.2014) (citations omitted).

This Court has recently addressed the *scope* of rational basis standard of review, stating:

> The term "rational" has a special meaning in constitutional law. It does not mean that a law must be reasonable, sensible, well-founded, effective, or supported by evidence. In fact, in many contexts (including public education), state legislatures and policymakers can make "rational" decisions that, when implemented, are unreasonable, counter-productive to a stated goal, or contrary to all past experience and evidence. When a federal court conducts a rational basis review, the review is limited to determining only whether there is a *conceivable* rational *relationship* between the policy and a legitimate governmental objective. The rational relationship need not even be articulated by the policymakers defending the policy choice, and there may be no actual proof supporting that decision (in fact, there could even be proof demonstrating that the policy does not, in fact, achieve the desired result).

22

In sum, where rational basis review applies—as is the case here—the U.S. Constitution allows state legislators and policymakers to make both excellent decisions and terrible decisions, provided that the decisions are based on some conceivable modicum of rationality at the time of their passage or application in practice. The U.S. Constitution does not permit a federal court to evaluate or rule upon the wisdom of these decisions, even where the policy may be unfair, misguided, or counter-productive. Thus, when a federal court finds that a policy is "rationally related to a legitimate government objective," the court is not endorsing the policy, finding that it is empirically supported, or concluding that it is a wise idea. The court is merely ruling that the U.S. Constitution *does not forbid* a state or locality from adopting or applying that policy.

*Wagner v. Haslam*, No. 3:15-CV-115, 2015 WL 3658165, *14-15 (M.D. Tenn. June 12, 2015).

As previously discussed, in order to state an equal protection claim, a party must claim that the government treated similarly situated persons differently. *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 574 (6th Cir. 2008) (citing *Silver v. Franklin Township, Bd. of Zoning Appeals,* 966 F.2d 1031, 1036 (6th Cir.1992)). While Plaintiffs Palmer and Ware allege that "student ID cards issued by Tennessee's public colleges and universities are nearly identical to faculty and employee ID cards issued by Tennessee's public colleges and universities in all their elements, features, functionality and security," they do not allege that they, as students of a public university, are similarly situated to the faculty and staff of a public college or university. *See* DE 36 Page ID# 280, ¶ 61; *see also* Page ID# 286, ¶ 90 (there "exists no rational basis for treating Tennessee public postsecondary educational institutions' student ID cards differently from nearly identical current and retired faculty and employee ID cards issued by the same institution").

And, while Plaintiffs Palmer and Ware allege that the physical features and process for issuing student IDs and faculty and staff IDs are nearly identical, nowhere do they allege that the process for becoming a student at a public university is identical, or even nearly identical, to the process of becoming a faculty or staff member of a public college or university. *See* DE 36 Page ID# 280-281. Plaintiffs' status as a student at a public university is plainly different from that of

a current or retired faculty or staff member of a public university. Thus, Plaintiffs' equal protection

claims is based more on the argument that public university *student ID cards* are similarly situated

to current and retired public university *faculty and staff ID cards* and not that Plaintiffs themselves

are actually similarly situated to faculty and staff. As their status as students is entirely different

from the status of university faculty and staff, Plaintiffs Palmer and Ware cannot demonstrate that

they are similarly situated to either current or retired public college and university faculty and staff

to trigger application of the Equal Protection Clause.

Furthermore, even if the factual allegations in the Amended Complaint are sufficient to

establish that Plaintiffs Palmer and Ware, as students of a public university, are similarly situated

to current and retired faculty and staff of public universities, there clearly is a rational basis for the

legislature's policy decision to exclude student IDs. As reflected in the Amended Complaint, the

legislature had concerns about the "faking" of student IDs—concerns that were not similarly

expressed with respect to current and retired faculty and staff IDs.[6] *See* DE 36 Page ID# 295, ¶ 4,

299-300, ¶20, 302, ¶ 27, 305, ¶32, 307, ¶35 and 308, ¶36. The legislature's decision to exclude

student IDs because of a belief or perception that they can be more easily obtained and/or faked,

is clearly rationally related to the purpose of the act, as one of the primary purposes of the act is to

protect the integrity of elections by combating in-person voter fraud. *City of Memphis,* 414 S.W.3d

at 105. Plaintiffs Palmer and Ware assert, however, that the exclusion of student IDs is not

rationally related to this purpose because the claims that student IDs can be faked are either

unsubstantiated or based in inaccurate information. This argument is of little relevance under a

rational basis review as the government has no obligation to produce evidence to support the

rationality of its statutory classifications and may rely entirely on *rational speculation* unsupported

---

[6] At least one legislator also expressed a concern that the inclusion of student IDs would impose an administrative burden on poll workers to determine which student IDs were valid. *See* DE 36 Page ID# 307 at ¶35.

24

by any evidence or empirical data. *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000)(citing *FCC v. Beach Commc'n, Inc.,* 508 U.S. 307, 315 (1993)).

Plaintiffs in essence are asking this Court to substitute its judgment for that of the Tennessee legislature and declare that student ID cards issued by any accredited, not-for-profit postsecondary educational institute in Tennessee are a valid form of voter ID.[7]  However, under rational basis review, a court does not sit as a "super-legislature" to second-guess legislative factual conclusions when there is any basis at all for reaching them, or to substitute its judgment as to how valid regulatory goals should be accomplished.  *Operation Badlaw, Inc. v. Licking County Gen. Health Dist. Bd. of Health*, 866 F. Supp. 1059, 1066 (S.D. 1992)(citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 236 (1990)).  Even where the wisdom or judgment of the state legislature is debatable, a federal court is not free to set aside the legislature's judgment to substitute its own. *Kelley v. Metro. Bd. of Educ. of Nashville and Davidson County, Tenn.*, 836 F.2d 986, 996 (6th Cir. 1987), *cert. denied*, 487 U.S. 1206 (1988); *Spence v. Miles Lab., Inc.*, 810 F. Supp. 952, 963 (E. D. Tenn. 1992)(citing *Hargraves v. Brackett Stripping Machine Co.*, 317 F. Supp. 676, 683 (E. D. Tenn. 1970).

The test for constitutional purposes is not whether the legislative scheme is imperfect, but whether it is wholly irrational.  *Borman's Inc. v. Michigan Property & Cas. Guar. Assoc.*, 925 F.2d 160, 163 (6th 1991)(citing *Pennell v. City of San Jose*, 485 U.S. 1, 13-14 (1988)).  As the Supreme Court has recently stated "the Constitution does not require the [State] to draw the perfect line nor even to draw a line superior to some other line it might have drawn.  It requires only that

---

[7] Tennessee's voter photo ID act applies to all registered voters in Tennessee that desire to vote-in person, including all students regardless of whether they attend a nonprofit or for-profit postsecondary educational institution.  There is no reason to believe that students at a nonprofit institution are any differently situated than students at a for-profit institution.  Yet, Plaintiffs seek only to include student ID cards issued by nonprofit postsecondary educational institutions as a valid form of voter ID.  In doing so, Plaintiffs make their own "policy" judgment as to what forms of ID should be considered acceptable for purposes of voting, thereby highlighting the fatal flaw in the Equal Protection Claim.

the line actually drawn be a rational line*." Armour v. City of Indianapolis, Inc*., 132 S.Ct. 2073, 2083 (2012); *see also Richardson v. Township of Brady*, 218 F.3d 508, 514 (6th Cir. 2000) ("A legislative body need not even select the best or the least restrictive method of attaining its goals so long as the means selected are rationally related to those goals.") (internal quotations omitted).

Tennessee's voter photo ID act is not only rationally related to a legitimate state interest, but is a practical, narrowly tailored means for the State to achieve its interest in protecting the integrity of the election process and "to guard against the risk of voter impersonation by ensuring that voters are who they say they are." *City of Memphis*, 414 S.W.3d at 105. The exclusion of student IDs as one of the valid forms of voter ID, based on the belief and/or perception that such IDs are often faked, is not wholly irrational in light of the entire statutory scheme.[8] Accordingly, Plaintiffs Palmer and Ware have failed to state a claim for violation of their rights under the Equal Protection Clause resulting from the exclusion of student IDs under Tennessee's voter photo ID act and such claim should be dismissed in its entirety and with prejudice.

## CONCLUSION

For these reasons, Defendants respectfully request that this Court dismiss Plaintiffs' First Amended Complaint in its entirety and with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

/s Janet M. Kleinfelter
JANET M. KLEINFELTER (BPR 13889)
Deputy Attorney General
Public Interest Division

---

[8] Ironically, under the prior statutory scheme for verification of voters, student IDS would also not have been acceptable as a form of voter ID because they did not include the student's signature. *See* Tenn. Code Ann. § 2-7-112(c) (2010).

26

Case 3:15-cv-00210   Document 43   Filed 09/25/15   Page 26 of 27 PageID #: 486

(615) 741-7403
janet.kleinfelter@ag.tn.gov

/s/ Ryan A. Lee
RYAN A. LEE (BPR 31937)
Assistant Attorney General
Public Interest Division
P.O. Box 20207
Nashville, TN  37202-20207
(615) 741-3521
Ryan.lee@ag.tn.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of September, 2015, that a copy of the foregoing document has been served upon the following persons by:

  X    Electronic Case Filing (ECF) System to:

Douglas S. Johnston, Jr.
Barrett Johnston Martin & Garrison, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
(615)244-2202
djohnston@barrettjohnston.com

Jon Sherman
Fair Elections Legal Network
1825 K St. NW, Suite 450
Washington, DC 2006
(202)248-5346
jsherman@fairelectionsnetwork.com

/s/ Ryan A. Lee
RYAN A. LEE (31937)

27