UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NASHVILLE STUDENT ORGANIZING COMMITTEE, JUSTIN BAUTISTA-JONES, TYSHAUNDA BLANCHE, JARRETT HARPER, BREONNA FRIERSON, SETH BARRETT, MARQUISHA PALMER, and KIERRA WARE, <br><br> Plaintiffs, <br><br> v. <br><br> TRE HARGETT, in his official capacity as Tennessee Secretary of State, and MARK GOINS, in his official capacity as Coordinator of Elections, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 3:15-cv-00210 <br> Judge Aleta A. Trauger |

## MEMORANDUM

Pending before the court is a Motion to Dismiss filed by the defendants (Docket No. 42), to which the plaintiffs have filed a Response in Opposition (Docket No. 48), and the defendants have filed a Reply (Docket No. 49). For the reasons discussed herein, the motion will be granted.

## BACKGROUND AND PROCEDURAL HISTORY

This is an action challenging, in part, the constitutionality of Tennessee's voter identification law, Tenn. Code Ann. § 2-7-112 (the "Tennessee Voter ID Law"). Pursuant to § 2-7-112(a)(1), in order to vote in person, a voter must present "one (1) form of identification that bears the name and photograph of the voter," subject to certain exemptions for voters who are indigent or who have a religious objection to being photographed. Under § 2-7-112(c),

1

acceptable forms of photo identification include: Tennessee-issued driver licenses; valid Tennessee-issued non-driver photo identifications (available pursuant to Tenn. Code Ann. § 55-50-336); valid United States passports; valid United States military identification cards; valid employment identification cards issued by the State of Tennessee or the United States; employee identification cards issued by the State of Tennessee for retired state employees; and valid identification cards issued by the State of Tennessee or the United States, with an express exception for any identification cards "issued to a student by an institution of higher education."

On March 4, 2015, the plaintiffs – a group comprised of several individual Tennessee students together with the Nashville Student Organizing Committee, a nonprofit organization advocating for social justice and civil rights – initiated this action. (Docket No. 1.) On September 9, 2015, with leave of court, they filed the First Amended Complaint (the "Complaint"), which is the current operative pleading. (Docket No. 36.) According to the Complaint, all of the individual plaintiffs are students at public or private universities and colleges in Tennessee, and current residents of Tennessee, who do not possess any of the forms of photo identification acceptable under the Tennessee Voter ID Law. (Docket No. 36 ¶¶ 11-17.) They do, however, possess student identification cards from their Tennessee schools as well as photo identification cards issued by other states. They are registered to vote in Tennessee (or have submitted applications for registration) but are unable to vote without first obtaining an acceptable form of photo identification. *Id*. Six of the individual plaintiffs are between the ages of 18 and 19; the seventh is thirty years old. *Id*.

The Complaint contains two causes of action under 42 U.S.C. § 1983: 1) a claim that the Tennessee Voter ID Law's exclusion of student identification cards from the list of acceptable forms of voter identification violates the Twenty-Sixth Amendment's prohibition against

2

denying or abridging someone's right to vote on the basis of age; and 2) a claim, on behalf of those plaintiffs who are students of Tennessee *public* colleges and universities that the Tennessee Voter ID Law violates the Equal Protection clause of the Fourteenth Amendment by differentiating between their student identification cards and the identification cards issued by the same institutions to current and retired faculty members and staff. The Complaint seeks both declaratory and injunctive relief. Specifically, the plaintiffs request: 1) an order declaring that the Tennessee Voter ID Law violates the Fourteenth and Twenty-Sixth Amendments of the United States Constitution, and 2) a permanent injunction requiring the defendants to accept as voter identification, under the Tennessee Voter ID Law, student identification cards "issued by any accredited, not-for-profit postsecondary educational institution in Tennessee." (Docket No. 36, pp. 35-6.)

The Complaint does not allege that the plaintiffs are unable to obtain Tennessee issued non-driver photo identification cards, which are acceptable for voting under the Tennessee Voter ID Law. Rather, the Complaint alleges that obtaining such an identification card – which is free of charge – would require a student to gather the necessary documentation (which may include paying a fee to retrieve a copy of his or her birth certificate) and then to travel to one of the Tennessee Driver's Service Centers. (Docket No. 36 ¶ 58.) The Complaint further alleges that the Driver's Service Centers are only open between 8:30 a.m. and 5:30 p.m. on weekdays and may be inaccessible or not easily accessible by public transportation, making it difficult for students without access to vehicles to reach them. *Id*.

The Complaint goes on to allege that the content of the legislative debate surrounding the Tennessee Voter ID Law shows that Tennessee legislators intentionally excluded student identification cards from the list of acceptable voter identifications in order to inhibit younger

people from voting and sway election outcomes. (Docket No. 36 ¶ 4.) Specifically, the Complaint alleges that Tennessee legislators are aware of the rigorous verification of one's identity that accompanies becoming a student at a public or private college or university and obtaining a student identification card from any of these institutions, and also that there is no substantial difference between the identification cards issued to students by public institutions of higher education and those issued to faculty members and staff of those same schools. (*Id.* ¶¶ 4, 34-35, 80.) It further alleges that other provisions of Tennessee law make it easier for older residents to vote – including a provision allowing any adult over age 60 to utilize absentee voting without submitting a photo identification, while only allowing individuals under age 60 to utilize absentee voting if they can provide an excuse[1] – and that the legislature has repeatedly entertained measures to render voting even easier for the elderly, while rejecting measures that would make voting easier for students and other young voters. (*Id.* ¶¶ 43-45.) Finally, the Complaint alleges that the Tennessee Voter ID Law's exclusion of identification cards issued by other states and by local entities, such as public libraries, further restricts students, who can more easily obtain these identification cards than the ones accepted under the Tennessee Voter ID Law. (*Id.* ¶ 78.)

In addition, the Complaint acknowledges that the legislative history of the Tennessee Voter ID Law involves concerns about preventing voter identification fraud. (*Id.* ¶ 20.) The Complaint also notes that certain legislators have expressed concerns that false student

---

[1] The Complaint notes that students under age 60 may utilize absentee voting by showing that they are residing away from their county of registration in order to attend school. This provision, however, does not allow students to register and vote as residents of the county in which they attend school and currently reside and will only allow them to vote in the state of Tennessee at all if they are originally from Tennessee and have a prior address within the state.

4

identification cards are prolific due to underage students' use of these cards to enter nightclubs and, ostensibly, consume alcohol. (*Id*. ¶ 27.) The Complaint alleges, however, that there is little to no evidence that student identification cards are more vulnerable to falsification or duplication than other forms of accepted voter identification, including faculty/staff identification cards from the same institutions, nor that false student identifications have been used, or are likely to be used, to commit voter identification fraud in Tennessee or elsewhere. (*Id*. ¶¶ 20, 35, 42.)

On September 25, 2015, the defendants filed the pending Motion to Dismiss under Rule 12(b)(6), for failure to state a claim, along with a Memorandum in support. (Docket Nos. 42, 43.) The defendants' Motion articulates that the state's interest in the Tennessee Voter ID Law's exclusion of student identification is based on the desire to prevent voter identification fraud. (Docket No. 43, p. 3.) The defendants also state that the provisions differentiating between student and faculty/staff identification cards from public institutions of higher education are based on the different relationships that the state has with employees and students (irrespective of whether similar procedures are used to issue the identification cards themselves) as well as the state's concern that student identification cards are more regularly and easily falsified, combined with the burden on poll workers to have to distinguish between real and fraudulent student identification cards. (*Id*. pp. 24.)

On September 23 and 24, 2015, three separate Motions to Quash were filed by non-parties to this action with respect to deposition and document subpoenas issued by the plaintiffs. (Docket Nos. 37, 38, 40.) On September 29, 2015, the court issued an Order staying both discovery and further briefing on the pending Motions to Quash until the Motion To Dismiss is resolved. (Docket No. 45.)

5

On October 9, 2015, the plaintiffs filed a Response in Opposition to the Motion to Dismiss (Docket No. 48) and, on October 23, 2015, the defendants filed a Reply (Docket No. 49).

## LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## ANALYSIS

**I.     Fourteenth Amendment Claim**

In order to succeed on a Fourteenth Amendment challenge to a state action, a plaintiff must show one of three things: 1) the state action impinges upon the exercise of a fundamental right without a compelling governmental interest; 2) the state action discriminates on the basis of a suspect classification (such as race or national origin) without being narrowly tailored to serve a compelling governmental interest; or 3) the state action discriminates against a non-protected class without any conceivable rational basis. *See, e.g., Romer v. Evans*, 517 U.S. 620, 631 (1996); *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973). The plaintiffs are not a protected class and, therefore, their Fourteenth Amendment claim cannot proceed under the second ground listed above. While the plaintiffs argue only the third ground – that the Tennessee Voter ID Law discriminates against them due to their age, without a rational basis – the court finds, for the reasons discussed below, that neither the first nor the third grounds are able to support the plaintiffs' claim.

The court turns first to the question of whether the Tennessee Voter ID Law impinges on a fundamental right. In a relatively recent case challenging the constitutionality of an Indiana statute requiring voters to present a photo identification – which they could obtain from the state at no cost, if needed – the U.S. Supreme Court found that such a requirement does not impinge on the fundamental right to vote in a way that would warrant heightened scrutiny. *Crawford v. Marion Cnty Election Bd.*, 553 U.S. 181 (2008). Despite noting that the photo identification requirement would more heavily burden certain groups of people (namely, the elderly, indigent, and the homeless, particularly with respect to retrieving a copy of a birth certificate as a potential requisite document for obtaining the state-issued identification), the *Crawford* opinion found that:

> for most voters who need them, the inconvenience of making a trip to the [Bureau
> of Motor Vehicles], gathering the required documents, and posing for a
> photograph surely does not qualify as a substantial burden on the right to vote, or
> even represent a significant increase over the usual burdens of voting.

*Crawford*, 553 U.S. at 198. After noting that the photo identification requirement imposed only "a limited burden on voters' rights," the *Crawford* court held that it need only be justified by "valid, neutral justifications." *Id*. at 203-04. The Supreme Court then found that Indiana's interests in preventing voter fraud, modernizing its voting procedures, and safeguarding public confidence in the voting process were sufficient to meet this test. *Id*.

While the *Crawford* opinion noted the thinness of the record in that action to support a finding that the photo identification requirement imposed a severe burden on the indigent or elderly, groups with which that litigation was primarily concerned, the court reads *Crawford* to preclude a finding that the Tennessee Voter ID Law is severely burdensome on the plaintiffs, without a need to further develop the record. The allegations in the Complaint involving the burden posed to students by the logistics of having to obtain a state-issued identification other than a student identification card do not – as a matter of law – give rise to an inference that students are burdened in any way greater than the burden to the general population addressed in *Crawford*. Accordingly, the court looks only to whether the state of Tennessee has a valid, neutral justification for imposing this burden and finds that Tennessee's interests in preventing voter fraud, like the interests of the State of Indiana in *Crawford*, are sufficient to justify the Tennessee Voter ID Law. Therefore, the Tennessee Voter ID Law does not violate the Fourteenth Amendment on the grounds that it impinges on a fundamental right. Indeed, the plaintiffs appear to concede that the Tennessee Voter ID Law does not impose a more severe burden on students than the burdens at issue in *Crawford* and, accordingly, do not argue that the

Tennessee Voter ID Law warrants a heightened level of review under the Fourteenth Amendment.

Rather, the plaintiffs argue that they are bringing a different claim with different facts, based on the Tennessee Voter ID Law's specific differentiation between student and faculty/staff identifications issued by the same institutions, a matter not at issue in *Crawford*. The plaintiffs focus in on the *Crawford* opinion's specific reference to the Indiana statute as *nondiscriminatory*. Indeed, the reference in *Crawford* to the Indiana statute being nondiscriminatory appears to serve as an indicator that, even though the Indiana statute did not impinge on a fundamental right of any class of people, had it discriminated against a suspect class without being narrowly tailored to meet a compelling state interest – or discriminated against any group without a rational basis (invidious discrimination) – there could still be a potential constitutional violation. Because the record in *Crawford* did not support a finding of differential burdens on the elderly and indigent, however, that statute was found nondiscriminatory, and the *Crawford* court did not conduct such an analysis. The plaintiffs now ask the court to conduct this analysis with respect to their claims and argue that the proper standard of review is rational basis.

This essentially brings the court to the third ground for a Fourteenth Amendment violation listed above: discrimination against a non-protected group without a rational basis. Without even deciding whether the differentiation between student and faculty/staff identification cards issued by public colleges and universities (and the resulting difference in burdens between students and faculty/staff in obtaining a photo identification) renders the Tennessee statute at issue here discriminatory in a way that the Indiana statute at issue in *Crawford* was not, the court finds that the claim still fails as a matter of law. As the plaintiffs concede, if the Tennessee Voter ID Law is discriminatory on the basis of age, it is still subject

9

only to a rational basis standard of review because age is not a suspect classification (nor is the status of being a student).

Under rational basis review, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature. . . . In other words, a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993). Rather, "the governmental policy at issue will be upheld as long as there is a rational relationship between the disparity of treatment and some legitimate government purpose," and "a plaintiff faces a severe burden and must negate all possible rational justifications for the distinction." *Midkiff v. Adams Cnty Reg'l Water Dist.*, 409 F.3d 758, 770 (6th Cir. 2005); *see also id*. ("On rational-basis review . [.] . those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it.") (citing *Lenhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 346, 364 (1973)). Even *Crawford*, in analyzing the justification for Indiana's limited burden on voting rights without applying a heightened standard of review, noted that the motivations of individual legislators were not material once a valid, neutral justification had been articulated: "if a *nondiscriminatory* law is supported by valid neutral justifications, those justifications should not be disregarded simply because partisan interests may have provided one motivation for the votes of individual legislators." 553 U.S. at 204.

The defendants have articulated what the court finds to be a rational basis for distinguishing between faculty and student identification cards, namely the different relationship that the state has with the faculty/staff of its public institutions of higher education than it has with students of these same institutions (even if the processes for issuing identification cards are

the same), coupled with the state's concern that falsified student identification cards are more prolific because of their use by young people in purchasing alcohol and entering nightclubs. These concerns provide a justification for the differential treatment of student and faculty/staff identification cards in support of the state's interest in preventing voter fraud and instilling voter confidence. The court need not assess the veracity of these statements nor their role in motivating any or all of the individual legislators who enacted the Tennessee Voter ID Law. So long as the court is satisfied that this is a rational justification, which it is, the plaintiffs cannot meet their burden.

The plaintiffs argue that the justification articulated by the defendant is not sufficient to foreclose their claim in light of: 1) evidence that the *real* reason the Tennessee legislature enacted the Tennessee Voter ID Law was to discriminate against young voters, and 2) the lack of evidence to support a finding that allowing students to use their student identification cards to vote would actually increase voter fraud. Again, however, these arguments ignore the basic tenets of rational basis review, which is unconcerned with the actual motivations of the legislature so long as there is any conceivable rational relationship between the state's interests and the challenged statute.[2] The court finds that this test is satisfied by the defendants' articulated concerns about false student identifications and there is no need for further factual discovery or development of the record regarding the actual motivations of the legislators who enacted the Tennessee Voter ID Law. It is not relevant to the outcome of the court's analysis

---

[2] The plaintiffs cite *SmithKline Beecham Corp v. Abbott Labs.*, 740 F.3d 471 (9th Cir. 2014) for the proposition that the court should consider the Tennessee legislators' actual discriminatory intent. (Docket No. 48, p. 27-28.) *SmithKline*, however, explicitly acknowledged that intent does not matter under rational basis review (*id*. at 481) and considered intent only because it applied a heightened level of scrutiny to a claim involving the suspect class of sexual orientation (*id*. at 484).

11

whether there is any empirical basis to support the speculation that student identifications are falsified at a significant rate, that this has the potential to contribute to voter identification fraud, or that this concern is of a different magnitude than concerns about falsification of faculty/staff identifications from the same institutions. Similarly irrelevant is the question of whether these considerations actually motivated the legislators who enacted the Tennessee Voter ID Law.

Finally, the plaintiffs also argue that their claim should be treated differently than the claim in *Crawford* because they are seeking to strike only a *portion* of the Tennessee Voter ID Law (that portion related to the exclusion of student identifications), rather than the whole statute. The fact remains, however, that there needs to be a constitutional basis for striking even a portion of the statute, and the plaintiffs have not articulated, nor is the court aware of, any legal grounds to apply a heightened standard of review where only a portion of a statute is challenged.

In sum, the plaintiffs' Fourteenth Amendment claim fails as a matter of law.

## II. Twenty-Sixth Amendment Claim

The Twenty-Sixth Amendment to the United States Constitution states: "The right of citizens of the United States, who are 18 years of age or older, to vote, shall not be denied or abridged by the United States or any state on account of age." As the parties note in their briefing, there is no controlling caselaw from the Sixth Circuit or the Supreme Court regarding the proper interpretation of the Twenty-Sixth Amendment or the standard to be used in deciding claims for Twenty-Sixth Amendment violations based on an alleged abridgment or denial of the right to vote. The defendants argue that – given the legislative history and political context of the enactment and ratification of the Amendment that effectively lowered the voting age from 21 to 18 – the Amendment is designed to prohibit the denial or abridgement of voting rights of *18 to 20 year olds* only. Accordingly, the defendants argue that, because the plaintiffs cannot show

12

that the student population affected by the Tennessee Voter ID Law's exclusion of student identification cards consists entirely – or even predominantly – of individuals in this age range, the plaintiffs' claim cannot succeed.[3] The court is not swayed by this argument, which is undermined by the plain language of the Amendment broadly prohibiting abridgment of the right to vote on the basis of *age*. The plaintiffs can certainly make a case that students are disproportionately younger than the average voter population and that abridging the rights of students can be a proxy for abridgement of rights on the basis of age. Nevertheless, the court finds that the plain language of the Amendment precludes the plaintiffs' claim in light of the holding in *Crawford* that the burden of obtaining a photo identification card does not impinge on the right to vote in a way that warrants even a heightened level of scrutiny. Applying this reasoning, the court finds that, similarly, the Tennessee Voter ID Law is not an abridgment of the right to vote, let alone a denial of it, for purposes of a Twenty-Sixth Amendment claim.

Moreover, the court finds that the Tennessee Voter ID Law does not impose any unique burden on students. Under the Tennessee Voter ID Law, everyone is required to obtain some form of acceptable photo identification in order to vote. Students, like everyone else, can select among a state-issued driver license, a United States passport, or the free, state-issued non-driver

---

[3] The defendants cite several cases that are not controlling and that are anyway unpersuasive, because nowhere do they explicitly state that the Twenty-Sixth Amendment only protects the rights of 18 to 20 year olds. *See Walgren v. Bd. of Selectmen of Town of Amherst*, 519 F.2d 1364 (1st Cir. 1975); *Hill v. Gun*, 367 F.Supp.2d 532 (S.D.N.Y. 2005); *Bright v. Baesler*, 336 F.Supp. 527, 531 (E.D. Ky. 1971). Further, the cases cited by the parties where claims were successful under the Twenty Sixth Amendment – discussed in more detail below – likewise do not indicate that the success of the claims hinged on the plaintiffs being within the specific 18 to 20-year-old age range. See *Jolicoeur v. Mihaly*, 488 P.2d 1, 2 (Cal. 1971); *Ownby v. Dies*, 337 F. Supp. 38 (E.D. Tex. 1971); *U.S. v. Texas*, 445 F. Supp. 1245 (S.D. Tex. 1978); *Worden v. Mercer Cnty Bd. of Elections*, 294 A.2d 928 (N.J. 1972).

13

identification card.  The Tennessee Voter ID Law merely does not allow students to use the student identification cards that they already have.  Admittedly, allowing students to use these cards would make it easier for them to vote, but it does not automatically follow that *not* allowing them to use their student identification cards imposes a severe burden or otherwise abridges their right to vote.  Indeed, the handful of cases cited by the parties in which a state court or federal district court outside of this circuit has found a violation of the Twenty-Sixth Amendment – while not binding on the court – have involved state actions that actually blocked young people from voting rather than simply excluded measures that would make it easier for them to do so.  *See Jolicoeur v. Mihaly*, 488 P.2d 1, 2 (Cal. 1971) (finding a Twenty-Sixth Amendment violation where the state did not allow unmarried minors to establish domicile separate from their parents for purposes of voter registration); *Ownby v. Dies*, 337 F. Supp. 38 (E.D. Tex. 1971) (holding that the Twenty-Sixth Amendment was violated by statute that required a heightened standard for individuals under 21 to establish residency in order to be allowed to vote); *U.S. v. Texas*, 445 F. Supp. 1245 (S.D. Tex. 1978) (same); *Worden v. Mercer Cnty Bd. of Elections*, 294 A.2d 928 (N.J. 1972) (same).  Notably, state laws that denied students the ability to register to vote in the county of their campus residence have also been found to violate the Fourteenth Amendment, further distinguishing this type of burden on the right to vote from the limited burden imposed by the Indiana statute at issue in *Crawford* and the Tennessee Voter ID Law.  *See Bright v. Baesler*, 336 F.Supp. 527, 531 (E.D. Ky. 1971); *Ownby*, 337 F.Supp at 38; *U.S. v. Texas*, 445 F. Supp. at 1245.

For all of these reasons, the court does not find that the Tennessee Voter ID Law's exclusion of student identification cards from the list of acceptable voter identifications is the

14

type of state action the Twenty-Sixth Amendment is intended to protect against. Accordingly, the plaintiffs' Twenty-Sixth Amendment claim is precluded as a matter of law.

## CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss will be granted and the plaintiffs' claims will be dismissed with prejudice. The pending Motions to Quash will be denied as moot.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge